IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH GAJDOS, also known as JOSEPH )
RAYMOND GAJDOS, )
    Plaintiff, )
)
vs. ) Civil Action No. 06-1362
)
NOEL MISSIG, FRANK DIENER and )
THE BOROUGH OF WEST MIFFLIN, )
    Defendants. )

REPORT AND RECOMMENDATION

I.    Recommendation

It is respectfully recommended that the motion for summary judgment submitted on behalf of the defendants (Docket No. 14) be granted.

II.    Report

Plaintiff, Joseph Gajdos, brings this action alleging that Defendants, the Borough of West Mifflin, the former Chief of Police (Frank Diener) and a former police officer (Noel Missig), violated his civil rights when they filed charges against him for unlawful transfer of a firearm. He alleges that Defendants' actions constituted false arrest and malicious prosecution.

Presently before this Court for disposition is a motion for summary judgment, brought by the Defendants. For the reasons that follow, the motion should be granted.

    Facts[1]

---

[1] These facts are taken from the Statement of Material Facts filed by Defendants (Docket No. 16), which contains numbered paragraphs and citations to the record in accordance with Local Rule 56.1(B)(1). Plaintiff has not submitted a response to these statements with numbered paragraphs and citations to the record, as required by Local Rule 56.1(C)(1). Pursuant to the Local Rules, Defendants' facts should be deemed admitted. W.D.PA.LR. 56.1(E). Moreover,
                                                                                                                                                                                               (continued...)

Plaintiff's claims arise out of his arrest by Defendant Missig. Although many of the relevant documents no longer exist because Plaintiff obtained an order of expungement, Defendants observe that, based upon the deposition testimony of Officers William Skweres and Noel Missig, and documents attached to Officer Skweres' deposition, it appears that Plaintiff was arrested on or about July 1, 2003, on charges filed against him by Defendant Missig and by non-party Skweres. (Missig Dep. at 33; Skweres Dep. at 28-29.)[2]

The charges filed against Plaintiff by Defendant Missig, as identified by the Honorable Robert E. Colville of the Court of Common Pleas of Allegheny County in a non-jury trial held on October 13, 2004, were as follows:

> You are also charged at CC 200400902 that on Monday, the 16th day of June, 2003, in the County of Allegheny, for the sale or transfer of firearms, a misdemeanor of the second degree, two year maximum jail sentence, $5,000 maximum fine. You are charged with knowingly and intentionally selling, delivering or transfer of firearms; specifically a Smith and Wesson .38 Special, not being licensed, a dealer or manufacturer.

(Defs.' App. G at 4-5.) At the same non-jury trial, Judge Colville identified the charges filed against Plaintiff by Officer Skweres as follows:

> I have a criminal action here at CC 200400903 in which the District Attorney charges by information that on Tuesday, 17th day of June, 2003 in the County of Allegheny you did commit the following criminal acts: Count 1, false reporting to law enforcement, a misdemeanor of the first degree, five year maximum jail

---

[1](...continued)
Plaintiff does not appear to contest Defendants' facts. Rather, he points to his own version of events and contends that Detective Missig did not conduct an investigation prior to filing charges against him. This argument is addressed below.

[2]Defs.' App. B, C (Docket No. 16). According to the arrest report and supplemental report, on July 1, 2003, Plaintiff turned himself in on a warrant that was issued by Detective Missig, appeared before District Justice Olasz and was released on his own recognizance. (Missig Dep. Exs. 2, 4.)

2

sentence and $10,000 maximum fine. You are charged with knowingly giving false information, namely actor reported a gun was taken and/or stolen to law enforcement with the intent to implicate another.

Charges in the second count are false report to law enforcement, misdemeanor of the third degree, one year maximum jail sentence and $2,500 maximum fine. You are charged here with reporting to law enforcement authorities an offense or incident within their concern knowing it did not occur, pretend to furnish such authority with information relating to an offense or incident which you knew was not or had not occurred.

(Id. at 3-4.)

At a preliminary hearing held on January 7, 2004, Plaintiff was bound over on the charges by District Justice Thomas Torkowsky. (Defs.' App. F at 53.) The charges filed against Plaintiff by Defendant Missig were based upon information provided to him by Richard Crammer. (Missig Dep. at 18-22.)[3]

As Defendants note, the following facts have been established by discovery in this case: (a) Richard Crammer was a "casual employee" of a corporation owned by Plaintiff, School Security Services, Inc. ("SSSI"), on June 16, 2003. (Gajdos Dep. at 43-44; Crammer Dep. at 15-16, 26.)[4]

(b) Crammer, who was 18 years old on June 16, 2003, was not certified pursuant to Pennsylvania Act 235 to carry a firearm while working as a private security guard. (Crammer Dep. at 25, 28-29.)

(c) On or before June 16, 2003, Plaintiff asked Crammer to work a shift as a security guard at the Kennywood Giant Eagle, which is located in West Mifflin, and Crammer agreed to work that

---

[3] Pl.'s App. (Docket No. 19) Ex. B.

[4] Defs.' App. A, E.

shift. (Gajdos Dep. at 71-72, 74-75; Crammer Dep. at 27-31.)

(d) The contract between SSSI and the Kennywood Giant Eagle paid a higher rate to SSSI when it provided an armed guard. (Gajdos Dep. at 68-69.)

(e) Plaintiff met Crammer at the Kennywood Giant Eagle on June 16, 2003, immediately prior to Crammer commencing his shift. (Gajdos Dep. at 77-78; Crammer Dep. at 36-37.)

(f) A .38 caliber pistol owned by Joseph Gajdos was in the possession of Crammer on June 16, 2003. (Crammer Dep. at 37; Skweres Dep. at 20-22.)

(g) Crammer provided Detective Missig with a signed, handwritten statement that the .38 caliber pistol had been provided to him by Plaintiff along with the instruction that Crammer wear the gun while working security detail at the Giant Eagle. (Missig Dep. at 21 & Ex. 5; Crammer Dep. at 47 & Ex. A.)

(h) A .38 caliber pistol owned by Plaintiff was given to Duquesne Police Officer Skweres who in turn provided the pistol to the West Mifflin Police Department. (Crammer Dep. at 44; Skweres Dep. at 20-22.)

(i) On June 17, 2003, Plaintiff filed a complaint with Officer Skweres of the City of Duquesne Police Department that a .38 caliber pistol owned by him and kept in an unlocked drawer at the security office at Duquesne Place had been stolen and that the last individual who had access to the pistol was Richard Crammer. (Gajdos Dep. at 60-67; Skweres Dep. at 15-20.)

(j) Crammer testified at the preliminary hearing held on January 7, 2004, that a pistol was provided to him by Plaintiff on June 16, 2003, with the instruction that he wear the pistol while working at the Kennywood Giant Eagle, that he had it with him for a short period of time, then tried to return the gun to Plaintiff, but when he could not locate him, he took it to an off-duty

officer with the Duquesne Police Department. (Defs.' App. F at 6-9.)

(k) William Skweres, who was then a City of Duquesne Police Officer, testified at a preliminary hearing held on January 7, 2004 that Plaintiff reported to him on June 17, 2003, that a gun was stolen from a desk drawer at the Duquesne Place security office and that it had to have been taken by Crammer because he was the last person to have access to it, and Officer Skweres filed false reporting charges against Plaintiff. (Defs.'App. F at 45-48.)

(*l*) Richard Crammer testified at a non-jury trial held before Judge Robert E. Colville on October 13, 2004 that Plaintiff provided a handgun to him on June 16, 2003 knowing that he was not certified to carry the handgun and that Plaintiff directed Crammer to wear the handgun while working a security detail for Plaintiff at the Kennywood Giant Eagle. (Defs.' App. G at 9-12.)

(m) Plaintiff received a phone call from Detective Missig in which Missig advised Plaintiff that criminal charges had been filed against him. The day following the phone call, Plaintiff went to the offices of District Justice Olasz where he was advised of the charges, was arraigned, and was released on his own recognizance. Plaintiff testified that he was not accompanied to the District Justice's office by Officer Missig. Plaintiff described no further restrictions on his liberty, such as restrictions on travel, requirement to report to a bond officer, or incarceration. (Gajdos Dep. at 85-86.)[5]

Richard Crammer testified during his deposition that, after the pistol was provided to him by Plaintiff, he left the Giant Eagle, he attempted to contact Plaintiff, but was unable to contact Plaintiff to return the pistol to him. He therefore, went to the home of Jeffrey Dolansky, a City of

---

[5] As noted above, the few records that exist in this case indicate that Plaintiff turned himself in on July 1, 2003.

5

Duquesne Police officer known to him because of Crammer's involvement with the Duquesne Volunteer Fire Department, and asked Sergeant Dolansky what he should do with the gun. Sergeant Dolansky directed Crammer to turn the gun over to a police officer at the Duquesne Police Station, which Crammer did. (Crammer Dep. at 37-44; Dolansky Dep. at 17-21.[6])

William Skweres testified during his deposition that he received a handgun from Richard Crammer on June 16, 2003, determined that any offense occurred in West Mifflin, and turned the gun over to the West Mifflin Police Department that same date. Skweres testified that he provided the West Mifflin Police Department with Richard Crammer's name and address so that they could conduct an investigation. Skweres testified that he found Crammer to be more credible in his reporting to him of the disputed events and that he decided to file false reporting charges against Plaintiff. (Skweres Dep. at 30-31.)

Noel Missig testified that he received information from William Skweres of the Duquesne Police Department concerning allegations made by Richard Crammer, that he interviewed Crammer and obtained a signed statement from him, and that he determined to file charges against Plaintiff as a result of the unlawful transfer of the firearm. Defendant Missig testified during his deposition that he bore no animosity towards Plaintiff. (Missig Dep. at 17-22.)

Procedural History

Plaintiff filed this action on October 12, 2006. Jurisdiction is based on the federal question presented by the civil rights claims. Count I alleges that Missig subjected him to a false arrest and malicious prosecution. Count II alleges that Diener and the Borough of West Mifflin

---

[6]Defs.' App. D.

countenanced and participated in Missig's actions and that they are liable therefor. On October 15, 2007, Defendants filed a motion for summary judgment.

Summary Judgment

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty-Lobby, Inc., 477 U.S. 242, 248 (1986).

Section 1983 Claims

It is provided in 42 U.S.C. § 1983 that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

action at law, suit in equity, or other proper proceeding for redress....

The Supreme Court has held that § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." Albright v. Oliver, 510 U.S. 266, 271 (1994). See also Baker, 443 U.S. at 140; Graham v. Connor, 490 U.S. 386, 394 (1989). However, "[c]ertain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands. Where such multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claim's 'dominant' character. Rather, we examine each constitutional provision in turn." Soldal v. Cook County, Illinois, 506 U.S. 56, 70 (1992).

Fourth Amendment

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated ...." This provision has been made applicable to the states by the Fourteenth Amendment. Ker v. California, 374 U.S. 23, 30 (1963). "The Fourth Amendment prohibits arrests without probable cause." Berg v. County of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000) (citation omitted). Moreover, although a "false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment's protection against deprivations of liberty without due process of law, Baker, 443 U.S. at 142, the claim is derivative of a Fourth Amendment violation for arrest without probable cause. Groman v. City of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995). Finally, the Supreme Court has "suggested [that] malicious prosecution could be based

8

on a violation of the Fourth Amendment without delineating the specific types of actionable violations." DiBella v. Borough of Beachwood, 407 F.3d 599, 602 (3d Cir. 2005) (citing Albright, 510 U.S. at 275). Therefore, the Fourth Amendment is implicated in this case.

Defendants argue that: 1) Plaintiff's claims based upon allegations of false arrest are barred by the running of the statute of limitations for such claims; 2) his claims based upon malicious prosecution fail because he cannot establish that he suffered a deprivation of liberty consistent with the concept of a seizure as a consequence of a legal proceeding and because the charges were based upon probable cause; and 3) punitive damages cannot be recovered from a local government such as the Borough of West Mifflin. The Court will address the second argument first.

<u>Malicious Prosecution Claim</u>

Plaintiff alleges that Defendants' actions constitute malicious prosecution in violation of 42 U.S.C. § 1983. Defendants argue that he cannot maintain a cause of action for malicious prosecution.

The Court of Appeals for the Third Circuit has stated that:

To prevail in a Section 1983 action malicious prosecution action, a plaintiff must show:

> (1) the defendants initiated a criminal proceeding;
>
> (2) the criminal proceeding ended in the plaintiff's favor;
>
> (3) the proceeding was initiated without probable cause;
>
> (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
>
> (5) the plaintiff suffered a deprivation of liberty consistent with the

concept of seizure as a consequence of a legal proceeding.

DiBella, 407 F.3d at 601 (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)). Defendants argue that Plaintiff cannot meet the third and fifth elements of his claim.[7]

Lack of Probable Cause

The Supreme Court has defined probable cause as "facts and circumstances ... sufficient to warrant a prudent person, or one of reasonable caution, in believing in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979) (citations omitted). The Court has further noted that "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts." Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983).

The Court of Appeals for the Third Circuit has stated that:

Generally, the question of probable cause in a section 1983 damage suit is one for the jury. This is particularly true where the probable cause determination rests on credibility conflicts. However, a district court may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly.

Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788-89 (3d Cir. 2000) (citations omitted). In that case, Merkle, a school teacher, brought suit when she was criminally charged with theft by taking by a police detective (Hahn), who swore out an affidavit of probable cause based on information given to him by the school principal (Thomas) that she had caught Merkle removing

---

[7]The Supreme Court recently noted that it has never explored the contours of a Fourth Amendment malicious-prosecution claim under § 1983, but that lower courts have followed a number of approaches to the issue. Wallace v. Kato, 127 S.Ct. 1091, 1096 n.2 (2007).

10

some boxes of crayons from the school to donate to a community center. Thomas told Hahn that Merkle had admitted that she had no permission to take the property she was found loading into her car and that she intended to donate it to the community center. The court concluded that "a reasonable jury could not find that Hahn lacked knowledge of sufficient facts to establish probable cause to arrest Merkle for the crime of theft by taking." Id. at 790. The court noted that:

> Merkle also contends that Hahn lacked probable cause because he failed to interview other witnesses, such as Vice Principal Anderson, art teacher Markowich, or Merkle herself, prior to making the arrest. However, Hahn had every reason to believe a credible report from a school principal who witnessed the alleged crime. This report alone sufficiently established probable cause. Hahn was not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed.

Id. n.8 (citations omitted).

Defendants note that Plaintiff was charged with violating the following statute:

> Any person, licensed dealer, licensed manufacturer or licensed importer who knowingly or intentionally sells, delivers or transfers a firearm in violation of this section commits a misdemeanor of the second degree.

18 Pa. C.S. § 6111(g)(1). The section on transfers by individuals provides that:

> Any person who is not a licensed importer, manufacturer or dealer and who desires to sell or transfer a firearm to another unlicensed person shall do so only upon the place of business of a licensed importer, manufacturer, dealer or county sheriff's office, the latter of whom shall follow the procedure set forth in this section as if he were the seller of the firearm. The provisions of this section shall not apply to transfers between spouses or to transfers between a parent and child or to transfers between grandparent and grandchild.

18 Pa. C.S. § 6111(c).

Defendants argue that the record demonstrates that the charges were filed against Plaintiff

based upon probable cause.[8] Richard Crammer testified, at the preliminary hearing, at the criminal trial and in his deposition in this case, that Plaintiff gave him a firearm in a manner prohibited by section 6111 and that he reported this information to Detective Missig. Detective Missig was given not only the information, but also the firearm. He concluded that Crammer's statements were more credible than those of Plaintiff, who claimed that his gun was stolen and that Crammer was the last person who had access to it. Detective Missig's assessment was echoed by Officer Skweres, who directed Crammer to Detective Missig. Finally, Defendants note that the District Justice who held the preliminary hearing bound Plaintiff over for trial because he found probable cause to exist. The Court of Appeals has held that "the common law presumption raised by a magistrate's prior finding that probable cause exists does not apply to section 1983 actions." Merkle, 211 F.3d at 789. Nevertheless, although not conclusive, the fact that a district justice found probable cause may be referred to as evidence in support of such a conclusion. See Pardue v. Gray, 136 Fed. Appx. 529, 533 (3d Cir. 2005).

Plaintiff argues that, because the majority of evidence consists of deposition testimony, the credibility of witnesses is dispositive of whether probable cause existed and the matter should be submitted to a jury. However, the case he cites, Broadwater v. Sentner, 725 A.2d 779 (Pa. Super. 1999), was an action for unlawful use of civil proceedings and it concerned the issue of whether an attorney had probable cause to file a petition to revoke certain letters of administration and have his client appointed administrator of a deceased minor's estate. The issue in this case is whether Detective Missig had probable cause to arrest Plaintiff for violating

---

[8]Defendants cite 42 Pa. C.S. § 8352. However, this statute concerns the existence of probable cause to bring a civil proceeding, not whether the police have probable cause to make an arrest.

section 6111 at the time he did so.  Plaintiff's testimony at a deposition now was not part of the circumstances considered by Detective Missig in 2003.

Plaintiff also argues that Judge Colville did not believe Crammer's testimony and that Detective Missig did not conduct any investigation into the incident prior to swearing out a complaint and filing charges.  (Missig Dep. at 23-24.)  However, as noted above in the Merkle case, the officer is not required to make an exhaustive investigation once he concludes that probable cause exists.  Moreover, Judge Colville did not state that he found Crammer's testimony to lack credibility, nor did he state that the police lacked probable cause to make an arrest, only that, upon consideration of the totality of the evidence, he found Plaintiff not guilty.

Lack of Fourth Amendment Seizure

Defendants also argue that Plaintiff did not suffer a deprivation of liberty consistent with the concept of a seizure as a consequence of a legal proceeding.  In DiBella v. Borough of Beachwood, 407 F.3d 599 (3d Cir. 2005), the plaintiffs were issued a summons but not arrested, never posted bail, were free to travel and did not have to report to Pretrial Services.  Their liberty was restricted only during the municipal court trials they attended.  The court held that "[p]retrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure," but the plaintiffs "failed to state a cause of action for malicious prosecution because their attendance at trial did not qualify as a Fourth Amendment seizure."  Id. at 603. Defendants note that Plaintiff admitted that he was not subjected to a physical arrest, but was notified that charges were pending against him; that he went on his own to the District Justice's office where he was advised of the charges, arraigned and released on his own recognizance; and that he did not identify any restrictions imposed on him as part of his bond.

13

Plaintiff argues that his case is distinguishable because:

> he was of course required to attend several scheduled preliminary hearings (which were postponed due to the failure of either the police or Crammer to appear) and a trial. Further and more importantly, as a result of these charges, Mr. Gajdos' liberty was significantly impaired as a result of his loss of his professional licensure as a Private Detective. In as much [sic] as criminal charges were pending against him, Mr. Gajdos was unable to renew and accordingly lost his Private Detective license which prevented him from engaging in his chosen occupation until he was acquitted of the charges against him.

(Docket No. 17 at 7.) He contends that, prior to arresting him, Detective Missig called a West Mifflin School Director to state that he had an arrest warrant for Plaintiff; that, after the charges were filed, the news media were outside of the Kennywood Plaza Giant Eagle covering the story; that the Steel Valley School District dropped its contract for security services; and that the Tribune Review approached the Hempfield School District and it also canceled Plaintiff's services because of the publicity. (Id. at 7-8.)

As explained above, the requirement that Plaintiff attend preliminary hearings and trials does not qualify as a seizure for Fourth Amendment purposes. DiBella, 407 F.3d at 603. See also Benard v. Washington County, 465 F. Supp. 2d 461, 469 (W.D. Pa. 2006) (plaintiff was arrested but released on her own recognizance, was required to notify the court and bail authority if she changed her address and was required to attend court proceedings, not amounting to a deprivation of liberty consistent with a Fourth Amendment seizure).

As for the loss of business contracts that Plaintiff alleges resulted from the charges being filed against him, these are not in the nature of seizures at all, but rather appear to be property interests. Plaintiff points to no authority–and this Court has found none–suggesting that such losses are sufficient to maintain a malicious prosecution claim under § 1983. Therefore, he has

failed to point to evidence that he suffered a deprivation of liberty consistent with the concept of a seizure as a consequence of a legal proceeding. For these reasons, Defendants' motion for summary judgment should be granted with respect to his malicious prosecution claim.

False Arrest Claim

"The Fourth Amendment prohibits arrests without probable cause." Berg v. County of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000) (citation omitted). An arrest made without probable cause creates a cause of action for false arrest under 42 U.S.C. § 1983. Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988). To succeed on a claim for false arrest, a plaintiff must demonstrate that there was an arrest and that it was made without probable cause. Id. In addition, "where the police lack probable cause to make an arrest, the arrestee has a claim under [section] 1983 for false imprisonment based on a detention pursuant to that arrest." Groman v. City of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995).

Defendants argue that Plaintiff's false arrest claim is barred by the running of the statute of limitations, citing the recent Supreme Court case of Wallace v. Kato, 127 S.Ct. 1091 (2007).. Plaintiff responds that the Wallace case does not apply retroactively to this case, which was filed before Wallace was decided, and that the doctrine of equitable tolling should apply to toll the running of the statute of limitations until the criminal charges are resolved. However, the Court need not resolve this issue because, even assuming that Plaintiff's false arrest claim is timely brought, the existence of probable cause demonstrates that he cannot maintain a claim arising out of these events.

As discussed above, Defendants have demonstrated that Detective Missig had probable cause to arrest Plaintiff on the charges filed. Plaintiff has not proffered evidence creating a

15

genuine issue of material fact as to this issue. Therefore, he cannot maintain a false arrest claim arising out of the events in this case.

For these reasons, it is recommended that the motion for summary judgment submitted on behalf of the defendants (Docket No. 14) be granted.

Within thirteen (13) days after being served, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                          Respectfully submitted,

                          s/Robert C. Mitchell
                          Robert C. Mitchell
                          United States Magistrate Judge

Dated: December 19, 2007